**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EMMANUELLA CHERISME** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 15-6420** |
| **v.** | : | |
| | : | |
| **AIDS CARE GROUP** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                       JULY 26, 2016

# MEMORANDUM OPINION

**INTRODUCTION**

On December 3, 2015, Emmanuella Cherisme ("Plaintiff") filed a complaint for unlawful employment discrimination against AIDS Care Group ("Defendant") asserting allegations of sexual harassment and discrimination based on race, national origin, and gender in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2 ("Title VII").  [ECF 1].  On April 7, 2016, Defendant filed the instant *motion to dismiss* pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), arguing that Plaintiff's claims of sexual harassment and discrimination are deficient as a matter of law.  [ECF 4].  On April 25, 2016, Plaintiff filed a brief in opposition. [ECF 6].  The issues have been fully briefed, and this matter is ripe for disposition.

For the reasons stated herein, Defendant's motion to dismiss is granted.

**BACKGROUND**

When ruling on Defendant's motion to dismiss, this Court must accept, as true, the relevant and pertinent factual allegations and construe these facts in the light most favorable to Plaintiff.[1]  The factual allegations contained in Plaintiff's five-page complaint are summarized as follows:

> In April 2013, Defendant hired Plaintiff as an obstetrician/gynecologist in Sharon Hill, Pennsylvania.[2]  (Compl. at ¶ 5).  In June 2013, Plaintiff was offered a full-time position, which was to start in August 2013.  (*Id.* at ¶ 6).  Plaintiff was promised that, if she completed a project in Reading, Pennsylvania, by the end of 2013, she would be named an executive member of Defendant, which would result in higher compensation and benefits.  (*Id.* at ¶ 8).
>
> During her employment, Plaintiff alleges that she was "subjected to various acts of sexual harassment by Dr. Fungisai Nota," including threats of having her paycheck withheld unless sexual favors were given.  (*Id.* at ¶ 9).  While Plaintiff was executing the project in Reading, Regina Ubaldi, a nurse practitioner employed by Defendant, in conjunction with Dr. Nota, "attempted to sabotage Plaintiff's efforts to complete the project."  (*Id.* at ¶ 10).  Despite these attempts, Plaintiff completed the project during the first week of December 2013.  (*Id.* at ¶ 11).
>
> Plaintiff contends that Ms. Ubaldi made three racially motivated comments; *to wit:* (1) on an unspecified date, Plaintiff wanted to have her coat laundered in Sharon Hill, but Ms. Ubaldi said "that this could not be done because Plaintiff and Plaintiff's patients were black with a disgusted face"; (2) Ms. Ubaldi observed that Plaintiff "got darker" after a trip to Haiti and that Plaintiff "was uglier because she is 'darker' from spending time in Haiti"; and (3) in August 2013, Ms. Ubaldi told Plaintiff that she could not give Ms. Ubaldi "legitimate medical orders because Plaintiff is black."  (*Id.* at ¶ 14).
>
> On the Monday following her completion of the project in Reading, Plaintiff was terminated from her position by Ms. Ubaldi.  (*Id.* at ¶ 12).  Despite being promised three months of compensation and insurance as severance, Plaintiff did not receive any compensation, and her insurance was cancelled.  (*Id.* at ¶ 13).

---

[1]   When presented with a motion to dismiss for failure to state a claim, a district court "must accept all of the complaint's well-pleaded facts as true."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

[2]   The complaint does not specify whether this was a part-time or full-time position.

According to Plaintiff, throughout her employment she "performed well and in accordance with the expected standards of her profession." (*Id.* at ¶ 15).

**LEGAL STANDARD**

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Legal conclusions, however, may be disregarded and are not entitled to a presumption of truth. *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). When considering a motion to dismiss, a court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 210 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Instead of merely alleging the plaintiff's entitlement to relief, "[a] complaint has to 'show' such an entitlement with its facts." *Id.* at 211. Although specific details are not required, a complaint must "set forth sufficient facts to support plausible claims." *Id.* at 212; *see* Fed. R. Civ. P. 8(a) (providing that only a "short and plain statement of the claim showing that the pleader is entitled to relief" is required in a complaint). While the "plausibility standard is not akin to a 'probability requirement,' . . . [the standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Thus, to survive a motion to dismiss, a plaintiff must allege facts that "nudge [his or her] claims across the line from conceivable to plausible." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 570). A complaint's "[f]actual allegation must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**DISCUSSION**

As stated, Defendant moves to dismiss Plaintiff's claims for sexual harassment and discrimination based on race, national origin, and gender because these claims are deficient as a matter of law. Specifically, Defendant contends that Plaintiff failed to allege facts: (1) sufficient to meet the essential elements of either a *quid pro quo* or a hostile work environment discrimination claim under Title VII; and/or (2) necessary to meet the elements for race, national origin, and gender discrimination claims. Plaintiff disputes these contentions. This Court will address Defendant's arguments in turn.

*Plaintiff's Title VII Sexual Harassment Claim*[3]

At Count I of her complaint, Plaintiff avers that she "was subjected to various acts of sexual harassment by Dr. Fungisai Nota, including being threatened with having her paycheck withheld unless certain sexual favors were given." (Compl. at ¶ 9). Plaintiff contends that these (mostly unspecified) acts violated her rights under Title VII.

Title VII has been interpreted to preclude sexual harassment in the workplace.[4] *See Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990). Claims for sexual harassment under Title VII may be based on two potential theories: (1) a *quid pro quo* claim and/or (2) a claim of hostile work environment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 62 (1986) ("[A] violation of Title VII may be predicated on either of two types of sexual harassment: harassment that involves the conditioning of concrete employment benefits on

---

[3] Plaintiff also alleges claims under the Pennsylvania Human Relations Act ("PHRA"). PHRA claims are subject to the same analysis as Title VII claims. *See Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083-84 (3d Cir. 1995). Therefore, the analysis set forth herein as to Plaintiff's Title VII claims applies equally to Plaintiff's state law PHRA claims.

[4] The relevant portion of Title VII provides that it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1).

sexual favors, and harassment that, while not affecting economic benefits, creates a hostile or offensive work environment."); *Moore v. Pa. Dept. of Military and Veterans Affairs*, 216 F. Supp. 2d 446, 448-49 (E.D. Pa. 2002) (considering a plaintiff's claims under both *quid pro quo* and hostile work environment theories where the plaintiff failed to identify the Title VII theory on which she based her claim).

As to a *quid pro quo* sexual harassment claim, the Third Circuit Court of Appeals has held that:

> [u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute [*quid pro quo*] sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual . . . .

*Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 28 (3d Cir. 1997) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1296 (3d Cir. 1997)). In cases where a plaintiff has refused to submit to sexual advances, an actual change in employment conditions is required to state a *quid pro quo* claim. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998). That is, a plaintiff must "demonstrate either that she submitted to the sexual advances of her alleged harasser or suffered a tangible employment action as a result of her refusal to submit to those sexual advances." *Hurley v. Atlantic City Police Dep't,* 174 F.3d 95, 133 (3d Cir. 1999).

In a *quid pro quo* sexual harassment claim, Title VII is violated when a supervisor, with the actual or constructive knowledge of the employer, "makes sexual advances or demands towards a subordinate employee and conditions that employee's job status evaluation, continued employment, promotion, or other aspects of career development on a favorable response to those advances or demands, and the employer does not take prompt and appropriate remedial action after acquiring such knowledge." *Tomkins v. Pub. Serv. Elec. & Gas Co.*, 568 F.2d 1044, 1048-

49 (3d Cir. 1977). Liability under Title VII for *quid pro quo* sexual harassment exists only if "the consequences attached to an employee's response to the sexual advances [are] sufficiently severe to alter the employee's compensation, terms, conditions or privileges of employment." *Bonenberger*, 132 F.3d at 28 (citing *Robinson*, 120 F.3d at 1296-97). In addition, "Title VII *quid pro quo* sexual harassment generally requires the harasser to have authority to carry out the *quid pro quo* offer or threat." *Id*.

To state a hostile work environment sexual harassment claim, a plaintiff must allege facts sufficient to show that:

> (1) the employee suffered intentional discrimination because of [his or her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability.

*Bonenberger*, 132 F.3d at 25. As to the fifth element, *respondeat superior* liability exists if either:

> (1) the tort is committed within the scope of employment (i.e., the harasser has actual authority over the victim, by virtue of his job description); (2) the employer was negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment; or (3) the offender relied upon apparent authority or was aided in commission of the tort by the agency relationship.

*Id.* at 26. An employer is liable under a *respondeat superior* theory if the employer knew or should have known about the harassment and "failed to take prompt remedial action." *Id.*

Here, Defendant contends that Plaintiff has failed to state a *quid pro quo* claim of sexual harassment because Plaintiff, consistent with *Bonenberger*, has not alleged: (1) that Dr. Nota made "sexual favors" a condition of Plaintiff's employment; (2) that any response by Plaintiff, to Dr. Nota's request for sexual favors, was used as the basis for employment decisions affecting her; or (3) the existence of a relationship between her, Dr. Nota, and Defendant to support any

6

liability of Defendant for the alleged sexual harassment. Defendant also argues that Plaintiff has not specified whether she submitted to Dr. Nota's sexual advances or that she refused to submit to the sexual advances and suffered a tangible employment action as a result. After a careful review of the facts alleged in the complaint, this Court agrees that Plaintiff has not pled sufficient facts to support a *quid pro quo* sexual harassment claim.[5]

As stated, to bring a *quid pro quo* sexual harassment claim, Plaintiff must allege facts to show, *inter alia*, that she either submitted to the sexual advances of her harasser or suffered a tangible employment action as a result of her refusal to submit, and that her harasser had the authority to carry out the *quid pro quo* offer or threat. Plaintiff has not alleged facts to meet any of these requirements. Though Plaintiff pleads that Dr. Nota said he would withhold her paycheck unless certain sexual favors were given, Plaintiff never pleads that she succumbed to any of his demands, or that she refused and, later, was denied a paycheck as threatened. Plaintiff also does not plead that she was terminated because of her rejection of Dr. Nota's request for sexual favors. Plaintiff's *quid pro quo* claim is further belied by the fact that Plaintiff contends that it was Regina Ubaldi, the nurse practitioner, and not Dr. Nota, who terminated her employment. Under these facts, this Court finds that Plaintiff has not pled the requisite causation between the sexual harassment and any adverse employment action.

In addition, the complaint is completely devoid of any facts regarding the authority of Dr. Nota within the company (Defendant) to carry out his threat of withholding Plaintiff's paychecks or to otherwise affect the terms of her employment. To the contrary, as stated, Plaintiff alleges that it was Ms. Ubaldi, the nurse practitioner, and not her alleged harasser, who terminated her

---

[5] In her complaint, Plaintiff failed to identify the discrimination theory on which she bases her sexual harassment claim, *i.e. quid pro quo* or hostile work environment. Notwithstanding, in viewing the complaint liberally, this Court will review her claims under both Title VII theories.

employment. In addition, Plaintiff has not alleged any facts to show or even suggest that Defendant, as her employer, knew, supported, or acquiesced to Dr. Nota's conduct. As such, Plaintiff has failed to assert a viable claim of *quid pro quo* sexual harassment under Title VII. Therefore, Plaintiff's *quid pro quo* sexual harassment claim is dismissed.

Turning to the second recognized theory for sexual harassment, *i.e.* hostile work environment, Plaintiff must allege facts to show: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected Plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability. *See Bonenberger*, 132 F.3d at 25. Plaintiff must allege facts sufficient to show each element. *Id.* Defendant contends that Plaintiff has not met the second and fifth elements of such a claim because she has not alleged facts to show "pervasive and regular" discrimination and/or *respondeat superior* liability. This Court agrees, and will limit its analysis to these two elements.

As to the second element, harassment is pervasive "when incidents of harassment occur either in concert or with regularity." *Andrews*, 895 F.2d at 1484 (quoting *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987)); *see also Eldeeb v. Potter*, 675 F. Supp. 2d 521, 532 (E.D. Pa. 2009) (dismissing the plaintiff's complaint because it lacked facts that indicated "the frequency, severity, or abusive nature of the harassment to which [plaintiff] claims to have been subjected."). As stated, the only fact Plaintiff alleged regarding the sexual harassment by Dr. Nota is that she was "being threatened with having her paycheck withheld unless certain sexual favors were given." (Compl. at ¶ 9). Besides this one allegation, Plaintiff does not assert any frequency of the alleged harassment. Rather, Plaintiff notes only a single example. Without more, Plaintiff has not sufficiently pled facts to suggest that the alleged discrimination was

pervasive and regular.  *See Andrews*, 895 F.2d at 1484 (discussing that "[if] the discrimination were sporadic, it would be nearly impossible to sustain a jury verdict against a supervisor.").  As such, Plaintiff has failed to allege facts sufficient to show the second element of a hostile work environment claim.

As to the fifth element, Plaintiff is required to allege facts sufficient to establish the existence of *respondeat superior* liability.  *Bonenberger*, 132 F. 3d at 25-26.  When evaluating this element, a court must consider whether "the harasser is the victim's supervisor or merely a co-worker."  *Griffin v. Harrisburg Prop. Servs., Inc.*, 421 F. App'x 204, 208 (3d Cir. 2011).  An employer is liable to a victimized employee when the harasser is a supervisor, "with immediate (or successively higher) authority over the employee," who created an actionable hostile environment.  *Hitchens v. Montgomery Cnty.*, 278 F. App'x 233, 235-36 (3d Cir. 2008) (citations omitted).  If the supervisor takes tangible employment action against the employee, "such as 'discharge, demotion, or undesirable reassignment,'" the employer is liable.  *Id.* at 236 (quoting *Burlington Indus., Inc.*, 524 U.S. at 765).  When the harasser is instead a co-worker, and not a supervisor, *respondeat superior* liability exists "only if the employer failed to provide a reasonable avenue for complaint, or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action."  *Griffin*, 421 F. App'x at 208 (citing *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009)).

Here, Plaintiff has not asserted whether her harasser, Dr. Nota, was a supervisor or a co-worker.  Viewing the complaint in the light most favorable to Plaintiff, the complaint does not allege facts sufficient to show, or for this Court to infer, that Dr. Nota was her supervisor; nor does she allege facts sufficient to show that Dr. Nota took any tangible employment action

against her, *i.e.* discharge, demotion, or undesirable reassignment. As has been stated, Plaintiff alleges that Ms. Ubaldi, and not Dr. Nota, terminated her employment. Plaintiff has also failed to plead the facts necessary to show *respondeat superior* liability where her alleged harasser is considered a co-worker. In the latter scenario, Plaintiff does not allege facts sufficient to show that Defendant failed to provide a reasonable avenue for complaint, or that Defendant knew or should have known of the harassment and that it failed to take prompt remedial action. As pled, Plaintiff has failed to allege facts sufficient to establish the fifth element of a claim for hostile work environment.

Having failed to meet the second and fifth elements necessary to establish a claim for hostile work environment, this claim lacks merit. Accordingly, Count I of the complaint is dismissed.

*Plaintiff's Title VII Race, National Origin, and Gender Discrimination Claims*

At Count II of her complaint, Plaintiff alleges that her employment was unlawfully terminated because of her race, national origin, and gender in violation of Title VII, which makes it unlawful for an employer to discriminate against an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To assert a claim for employment discrimination under Title VII, a plaintiff must plead facts to raise a reasonable expectation that discovery will reveal that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action was taken under circumstances giving rise to an inference of discrimination. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999). The complaint must, therefore, allege facts to show, *inter alia*, that a "defendant terminated plaintiff's employment or otherwise discriminated against the plaintiff *because* plaintiff is a member of any of the specified

groups." *Thomas v. Dennis Real Estate, Inc.*, 1989 WL 114165, at *1 (E.D. Pa. Sept. 29, 1989) (emphasis added).

Here, Defendant argues that Plaintiff's race/national origin claim fails because Plaintiff has not specifically alleged in her complaint that she is a member of a protected class due to her race or national origin. While Plaintiff does not specifically allege her race, she does infer it when alleging that Ms. Ubaldi "told Plaintiff that Plaintiff could not give Ms. Ubaldi legitimate medical orders because Plaintiff is black." (Compl. at ¶ 14). Construing these facts and any reasonable inference therefrom in favor of Plaintiff, this Court finds that Plaintiff has (though barely) alleged her inclusion (or perceived inclusion) in a protected class on account of her race. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 571-72 (3d Cir. 2002) (discussing that the plain language of Title VII supports a perception theory of discrimination, where an employer discriminates against an employee based on the employer's perception that the employee belongs to a protected class); *see also Smith v. Specialty Pool Contractors*, 2008 WL 4410163, at *5-6 (W.D. Pa. Sept. 24, 2008) (denying the defendant's motion for summary judgment where the plaintiff's supervisor wrongly perceived the plaintiff as Jewish and recognizing the perception theory with regards to the plaintiff's Title VII claim).

Defendant also argues that the complaint is deficient as a matter of law because it fails to allege that Plaintiff was terminated because of her race, national origin, or gender. This Court agrees. Consistent with *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016), Plaintiff must allege facts sufficient to plausibly show that "race, color, religion, sex, or national origin was a motivating factor for any employment practice." Here, Plaintiff alleges that a nurse practitioner, Ms. Ubaldi, made three comments that Plaintiff believes were racially motivated. As for the timing of these comments, Plaintiff alleges only that one of these comments occurred

11

in August 2013, four months before her termination. Plaintiff does not, however, allege any facts connecting any of these comments to her termination or as the reason for her termination. Therefore, based on the facts asserted, or more accurately, the absence of necessary facts, Plaintiff has not sufficiently pled that Defendant discriminated against her based on her race or any other protected characteristic.[6] Under the circumstances pled, Plaintiff's discrimination claims are dismissed.

*Leave to Amend*

In her opposition to the motion to dismiss, Plaintiff requests leave to file an amended complaint should this Court determine that her complaint is insufficient to state a claim. In civil rights cases, district courts must consider allowing a plaintiff to amend when dismissing a case for failure to state a claim "unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004) ("Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."). Within this district, courts have extended this amendment practice to claims brought under Title VII. *See, e.g.*, *Eldeeb v. Potter*, 675 F. Supp. 2d 521, 524 (E.D. Pa. 2009) (recognizing the plaintiff's right to amend and allowing the plaintiff, who was alleging a Title VII hostile work environment claim, to amend his complaint). Because this Court cannot conclude, under the circumstances, that an amendment would be either futile or inequitable, Plaintiff is given leave to file an amended complaint to address the noted deficiencies.

---

[6] The facts to support Plaintiff's purported gender and national origin discrimination claims are even sparser. Most significantly, however, Plaintiff fails to allege any facts that could connect her discharge to her gender or national origin.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is granted, without prejudice. Should Plaintiff choose to file an amended complaint, she has twenty-one (21) days from the date of the docketing of this Memorandum Opinion and accompanying Order in which to do so. An Order consistent with this Memorandum Opinion follows.


NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.